You can come forward now. Yes. Whoever is going to be arguing can come forward now. Oh, he's going to stay there? I thought he was going to be up here. Wherever it's comfortable for you. It was explained to me earlier but I must not have heard it all right. All right. This is where they told me to sit. If you're comfortable there, could you start and see if we can hear you all right? I can't hear you. Can you hear me? I can now. Okay. And why don't you start your argument just to see how we're doing on sound? Okay. This is a longstanding school desegregation case that has been before this court several times. And the district court still has not declared this school system to be unitary. Before you get any further, your sound is good. I want to make sure that . . . the notice of appeal is from a particular order . . . Yes, sir. . . from the district court that said that the order of the school district is granted provided it is unopposed. And you do oppose it. You're here. So what is your understanding of the effectiveness of that order because it had that qualifier to it. I guess the district judge potentially thought that everybody had agreed, wasn't positive, so indicated in his order it would be effective unless opposed. Is that in the order? That's what the order says. And so what do you make of that since you oppose it? I opposed it. So is it in effect? That opposition has not been heard. Sir? That opposition has not been heard. I opposed it on the grounds that that is not a proper procedure for a district court judge to rule on any issue in a school desegregation case. The court had an order, specific order, addressing building, rehabilitation. As a matter of fact, two judges did. Judge Alvin Rubin who later went to the Fifth Circuit and as well as this judge has an extensive order about what you do when you are going to build, alter, add to, remove temporary buildings. He has an order. It's not an order that . . . Since you appealed? Nothing. The court, except they've continued building. I went out there last week and they will continue to build. Nothing has happened. We submit that the requirement of this school system is that they submit a planning study and analysis showing how what they are doing impacts desegregation. Counsel, I think my colleague is suggesting to you that you don't have a need to be here because you have won. In a sense, the judge didn't rule against you because he said he granted relief only if it's opposed. It's opposed so there's nothing here before us. Is that the problem that we have? Nothing is before us because . . . Well, it is because they haven't stopped. The problem is that there is a process and procedure that this court has established. You can't just go out and start building. You have to . . . This is a system that has been declared unconstitutional. It has been so. This case has been on the 25th. The school system has been declared to have been operating a dual system based on race. Therefore, the courts have set forth, not only from the court orders themselves in this case, but the general orders in implementing school desegregation period that say, okay, once you have declared, the school district has the responsibility to eradicate all vestiges of that dual system ruling branch and the district court supervises that process. There is nothing in this record that the defendants have presented that tells us how what they are doing impacts desegregation. I know what they are doing. It's a wholesale taking over and building in the white schools which would allow for reinstitution of segregated schools. That's what they are doing. The court order is there, I think, to prevent that. The court says, show me what you are doing and how it impacts desegregation. You want to build that Pontchartula High School, ten classrooms. Tell us what that impact is. What students will go to that school? What will their race be? Are you returning to a segregated system because Pontchartula is a predominantly white school and it was a predominantly white school when I was in high school? It still is. The court has a responsibility to supervise. They don't submit that to me. They file a motion for the court to approve. The court needs to look at what they are doing, hold a hearing on that motion, and decide whether it's going to approve it. Does the actions of the school system and reconstructing all across the parish, does it aid or deter school desegregation? I know there's a word that folks don't like to use. When I was growing up, we used it a little bit in court. Brown was about integrating schools. It's about removing that dual school system that was in place. We have a number of cases in this district where that has not been accomplished. Recent cases that have been up in this court that have not been accomplished, where that has not been accomplished. The problem here, what I wanted to see done, I filed that motion almost immediately. I filed the objection, and then I filed the motion in the hope that I could halt something. I didn't halt anything. Everything went on as if I had filed nothing. I'm asking this court to direct this district court to make the findings of fact that are necessary in dismantling a school system that was based upon race, public school system. Where are you building? Why are you building it? The court uses the term analysis. Give us analysis. Who's going to this school? You put in ten new classrooms here. Why did you choose here? Why didn't you choose some other alternative place? That's what school districts do. I think it is incumbent upon the district court judge that they do that. I got a pile of papers this morning about jurisdiction. This case has been up and down before this court. I filed my very first appeal before the Fifth Circuit Court of Appeals in this case. To tell me now that that wasn't a final judgment and you didn't have jurisdiction would be befuddling to me. I also know that not too long ago, the school district filed an appeal in this case. This is not a 1292 case. It's a 1292A1 case. If you alter, change, refuse to enforce an injunction, then the party affected, offended, can bring it before this court and ask this court to review that action. They've done it recently. I'm saying, judges, that what I expected did not happen. The first written order putting in writing about the buildings and what you had to do is in my brief. I wrote it. Judge Rubin signed off on it and adopted it as is to make sure that they understood because they were recklessly building everywhere. When the present judge came on, there was this problem with the district court and the district court judge and he wasn't there anymore. The present judge, the first thing I raised to him, I put it in that motion to review. Let's get back to this case because people are calling me day and night. Review this case and the one thing that I raised to the judge, I attached that order that Judge Rubin had signed. That order said very clearly because they were once again building stuff without approval of the court, where they wanted to, when they asked the court and what the court did, it reinstituted what Judge Rubin had done and added some more. As a matter of fact, it raised the amount that was a triggering amount was $25,000, I think. That was a triggering amount. The current judge raised that amount to $150,000 and then he added a little proviso at the end. He said, well, regardless of the amounts, if you do anything, build anything, that impacts upon school desegregation, unitary status, you ought to report it to the plaintiffs and the court. I have not seen, nor is there in the record, any planning study or analysis of what they are doing. They are about to spend a half billion dollars on schools and they are doing it in white areas. That's what they are doing. They are creating or recreating the infrastructure of segregated schools. I ask this court to not let them do that. Please stop them. The only thing I'm asking for is for the district court to review what they are doing, look at what they are doing, and require them to submit what they are to submit before another hammer goes into a nail lock there. All right, counsel. Thank you. We have your argument, thanks. Well, counsel, I wish you would start where I started with a friend on the other side. What do we actually have in front of us? I don't think you have a final order, Judge. What is, I mean, it's an odd order. Give me the background on the order. Why was it written that way, would you say? Okay, I think that's a great place. Let me give you the big picture here on this. I don't know that it's in the briefs, but this case has been before you many times, and like Mr. Taylor said, it was before you on motions, and you did find that you had jurisdiction. That's different in this case, because in those cases, it's about individuals, and it did modify the injunctions. That's not what we have here. Back in 2017, we filed a motion for unitary status on facilities. I can find the record documents for you all, but the at that time, we had gone through an extensive overhaul of it, not just an overhaul. We had every documentation. I think we had 1,800 pictures. We had hired an independent photographer. We had gone out and gotten pictures of every single school, everything in the school, because the standard is it should not be racially identifiable when you walk up to the school. So we did that, filed the motion, and Judge LaMelle gave us provisional unitary status, and found us to be in good faith, continued good faith, in trying to get rid of the vestiges of desegregation. So that's what happened in 2017. He gave us provisional unitary status in facilities, because he found the school system had been in good faith. He said we could review that semiannually, and he would look at it to give us full unitary status. Well, then instead of that, he asked us to come up with a plan that would get all of the green factors. So we started that process. It was a couple years, and we came up with what we call the final agreement, and that was negotiated between myself, settlement and litigation counsel now for the school system, and settlement counsel for the class, which is Mr. Gideon Carter. We went through probably two years of that. In 19, I think in September of 2019, we filed that final agreement with the court, and it did address the facilities issue. Although we were provisional in facilities already, it did address it again. Then the court asked us for some changes. All during this time, Mr. Taylor's counsel for the class. In December of 19, we did some tweaks that the court wanted, and we filed that again. Now, let me just say, I've been involved in this case since 2011, 12 maybe. Judge LaMalle has visited our parish on many occasions. Our parish is somewhat unique. It's long, and he has been to every school on more than one occasion. So December 19, we filed what we call the consent final agreement. Addresses all green factors, except for the ones we're already unitarian. We had a full trial in February of 2020. Mr. Taylor represented the class. I represented the school system. We had our experts there that gave full democratic study and a plan for facilities throughout the parish, a master plan. The court asked questions, asked Mr. Taylor if he had any recommendations. But now let me say, prior to this trial, the class counsel had this final agreement and had been asked several times by the court, do you have any input? Is there anything you want different? And there was never anything. During the trial, same thing. What do you suggest? We had many witnesses. After that, that's in February of 20. After that, the court considered all of this for a year. And then we had this, some things that had pretty much an emergency. However, they had been discussed ad nauseum with the experts back in 2020 and in 19. So he issues a ruling in March of 2021 on just the initial projects. And then I think about three weeks later, he issued 1661, which is the big order. I probably asked for this and appreciate you going through this detail. Can you get us up to October 2022? Yes. So we had Ponchatoula High School, which he mentioned. We have a huge growth in the south end of the parish. And so we don't have room for these students. And then we got these ESSER funds, $12 million. And we had some funds from our sales tax. So it's $54 million. It's not $554 million. It's $54 million. But it's no new money for the taxpayers. My question is, what's the unitary status of the district? Has there ever been, I assume your history that someone has, at some point in time, has moved for declaring the district unitary under the procedures for doing that? Yes, sir. We are completely unitary in extracurricular and in transportation. We are provisionally unitary in the other green factors. You're provisionally unitary. Yes, sir. And we are provisionally unitary in all of those, which he ruled in March of 21, and with a three-year walkout, which is, I think, appropriate under Youngblood and under the circuit. So back to your question about October. So June, we started discussing this, and we filed a motion for Ponchatoula High School to create permanent structures there. At that time, the court ruled on that and said, hey, but I want you to come up with the next part of what we talked about in trial. What are you going to do? What can you afford to do? So we did that. We sent that to counsel for the class, litigation and settlement counsel, and the chief equity officer was involved in those planning meetings, and this court compliance officer was also informed. We sent that, and then we filed our motion in, I think, September 30, and then the judge made this ruling. Now, during that time, counsel for the class never objected, never gave any input. I sent it to him, asked for objections, input anything, as the court directed me to do. So you're saying Judge LeMayer was basically put that caveat in there because he hadn't heard yet from Mr. Taylor? Yes, sir. Okay. Has anything happened since then because it was objected to? And so I would . . . Has Judge LeMayer done anything to recognize this order has no effect? No, sir, and I think that's because two days after he filed his objection with Judge LeMayer, he filed his appeal, so . . . So nothing's been occurring as to this . . . to the issues covered by this order? There has not. In fact, there has been no . . . there is construction ongoing in Tangimo Parish on the first initial phases, which were approved in March of 2021, final approval. So we have been building those, but there's been no buildings under this. What's the next step, if we agree with you, that there's nothing to appeal from? What's the next step in district court on this? I assume that Judge LeMayer will look at it again and see what the objections are from class and make a ruling. Instead of written objections, enter a new order, do whatever procedure he wants to before entering a new order? Yes, sir. Okay. So what do you want us to do? Well, ideally, if I had a wish bag, I would say, Your Honors, we have been provisionally unitary in facilities since 2017. The judge said we were in good faith then. In March of 21, he said we were still in good faith. You know, we would love to be completely unitary in facilities. How could we do that if you're right that the only order that's in front of us has been invalidated? I don't know. You asked me what I wanted. Well, it's one thing to ask for what you wish for. I think . . . I don't want to rephrase my good friend's question, but what do you think we need to do in light of your argument that this order has no effect? I think you need to send it back down to the district court for him to do what he wants to do with it, hear the objections, and make his ruling final. I think that's what the jurisprudence says regarding this order. The U.S. is remanded to dismiss the case from one of jurisdiction to a period. Yes. Send it back. You got anything else for us? You got . . . no, sir? Anything else? All right. Thank you. Well, as you can tell, Mr. Taylor, there is some concern on the bench about whether there is a final order here for us to deal with. I don't know if you have anything further to say about this. We're not saying any of your arguments are inappropriate and consistent and substantial, but they're premature because we don't have a final order in front of us. The order in front of you, Judge, is a modification, change, denial of an existing order. But the order says it will have no effect if you object. If I object? You objected, so it has no effect. Your Honor, that changes the burden of proof. In a school dissent case, I'm a compliance attorney. The burden of proof is on the school board to demonstrate that what they're doing is consistent with school desegregation. There's an order that says one, two, three, four, two pages that they must comply with that that particular . . . I'm sorry, Judge. Those are arguments for the district court first, and you haven't made them in the district court yet. Yes, Your Honor. Then we can consider if Judge LaMalle resolved them properly. Your Honor, I made those arguments. That's why I'm here. That's why I filed the appeal, to get here. You read this record. I've argued this over and over. What are the requirements for you to build, reconstruct? That's not rocket science. I have argued it, and that record, to me, says, I don't care. If you don't object . . . The problem with that is, is that I represent children, black children. They have no obligation to enforce the judge's order. They are the victims. They have no obligation to do anything. The court's responsibility is to see to it that what this school system has done and is doing is consistent with its orders. That's not my job. The green factors ought to be enforced by the court. When they say we're going to build . . . I misspoke when I said $304 million. It's $54 million and $20 million. When they put that out there, it is the responsibility of the court to review what they're doing, not throw some order out there and say, whoa, if anybody in the universe would drop down here and disagree, I might listen to them. That order's not directed to me. The children are the plaintiffs in this case. It's a class of children. That school system now has 10,000 black children equal 20,000 students in that district. This school board has a responsibility, and we've been before this court since 1965, and the court has not entered an order for unitary status yet, and yet it is going to just throw out . . . just carefully, oh, if somebody objects, if nobody objects, it's the responsibility of the court to object. If nobody says anything, I'm going to let this train just roll right on. That's not what the law is. These segregations are a complex process, and I agree that there's no one-size-fits-all anywhere, but there is a duty of the district court to review the actions of the court. That's not my duty. That's for the court to make them present to the court justification, clear and convincing evidence. I haven't heard those words in a long time about prior discrimination, to present by clear and convincing evidence that this building program meets the requirements of the law that this court, the Supreme Court, has set forth. That's all I'm asking. Ask the judge to tell the school system, present a planning study and analysis of what you are doing so that you can evaluate it in terms of whether it effectuates the segregation. That's all. That's all I want to see. I haven't seen that. It's not in the record. All right, Counselor. Your time is up. We have your argument, the argument from both sides here. We'll take this case under advisement. That is the final case of this panel for this week.